RORY SHANKLES                  )
                                      )

v.                                   )          1:07-cv-49/1:03-cr-257
                                   )          *Judge Edgar*

UNITED STATES OF AMERICA      )

## **MEMORANDUM**

Rory Shankles ("Shankles") has filed a *pro se* motion for post-conviction relief pursuant to 28 U.S.C. § 2255 (Crim. Court File No. 271).[1] Shankles pled guilty to Count One of an eighteen-count indictment. Count One charged Shankles along with nine other named codefendants and others know and unknown to the grand jury with conspiring to manufacture and distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B).

In this § 2255 Shankles's claims he was denied his right to due process for the following reasons: (1) he was sentenced to 168 months in prison based on an unconstitutional statute; (2) the Court enhanced his sentence based on an unconstitutional statute, i.e., 21 U.S.C. § 851; and (3) he was convicted of an offense involving a Schedule II controlled substance when non-injectable methamphetamine is a Schedule III controlled substance. In addition, Shankles claims his counsel rendered ineffective assistance because he failed to investigate his case and challenge the drug quantity asserted by the government.[2]

---

[1] Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

[2] For the sake of thoroughness, the Court also discusses claims one through three based on an ineffective assistance of counsel analysis.

The motion, together with the files and record in this case, "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also* Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts. The Court determines an evidentiary hearing is not necessary and for the following reasons will **DENY** Shankles's § 2255 motion (Court File No. 271).

## I. 28 U.S.C. § 2255 - Standard of Review

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972);[3] *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo,* 454 F.2d at 53; *O'Malley,* 285 F.2d at 735

---

[3]*Green v. Wingo* involves a petition for the writ of habeas corpus, pursuant to 28 U.S.C. § 2254, with respect to a state conviction. Nevertheless, §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other. *Davis v. United States,* 417 U.S. 333, 343-44 (1974); *Metheny v. Hamby,* 835 F.2d 672, 673-74 (6th Cir. 1987), *cert. denied,* 488 U.S. 913 (1988).

(citations omitted). Therefore, a motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood,* 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson,* 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

"It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair,* 157 F.3d at 430, *quoting United States v. Frady,* 456 U.S. 152, 166 (1982). A defendant must show a "fundamental defect" in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error which violates due process in order to prevail under 28 U.S.C. § 2255. *See Fair,* 157 F.3d at 430; *Gall v. United States,* 21 F.3d 107, 109 (6th Cir. 1994).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Reed v. Farley,* 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Hill v. United States,* 368 U.S. 424, 428 (1962); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas,* 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). In other words, "[o]n collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998), (quoting *Brecht v. Abrahamson,* 507 U.S. at 637). If the sentencing court lacked jurisdiction, however, then the conviction is void and must be set aside. *Williams v. United States,* 582 F.2d 1039, 1041 (6th Cir.), *cert. denied,* 439 U.S. 988 (1978).

To warrant relief for a nonconstitutional error, however, a movant must demonstrate a fundamental defect in the proceedings resulted in a complete miscarriage of justice or an egregious

error inconsistent with the rudimentary demands of fair procedure occurred during the criminal proceedings. *Reed v. Farley,* 512 U.S. at 354; *Grant v. United States,* 72 F.3d 503, 506 (6th Cir.), *cert. denied,* 517 U.S. 1200 (1996).

Having reviewed the materials thus submitted, together with the complete record of the underlying criminal case, the Court finds they show conclusively defendant is not entitled to relief on the claims asserted. Accordingly, the Court will decide the matter without an evidentiary hearing and explain the reasons the asserted grounds for relief are without merit. *See United States v. Todaro,* 982 F.2d 1025, 1028 (6th Cir.), *cert. denied,* 508 U.S. 943 (1993).

## II.  *Background*

On March 17, 2004, Shankles pled guilty to count one of an eighteen-count indictment. Shankles pled guilty to conspiring to manufacture and distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B). He was subsequently sentenced to the custody of the United States Bureau of Prisons to be imprisoned for a term of 168 months. Shankles pursued a direct appeal and the Court of Appeals for the Sixth Circuit affirmed the district court's judgment (Criminal Court File No. 246).

The following recitation of facts is taken from the Presentence Report ("PSR"):

24.     On May 17, 2003, a Chattanooga, Tennessee, Police Department (CPD) officer observed Robert Adkins' vehicle with a broken taillight in Chattanooga, Tennessee. The officer initiated a traffic stop. Robert Adkins was driving the vehicle and Damien Swanson was a passenger. Inside the vehicle, in plain view, the officer observed a hot plate, a gas can, and mason jars. Adkins did not have a driver's license. When he was removed from the car and placed under arrest, Adkins attempted to hide a bag of ephedrine when patted down. CPD officers also found a bag of red phosphorous in the vehicle. Adkins made a voluntary statement admitting to manufacturing (cooking) and selling methamphetamine.

25.     On May 24, 2003, Christi Kinsey was driving her vehicle in East Ridge,

Tennessee. There were outstanding warrants for her arrest and an East Ridge, Tennessee, police officer was aware of the warrants. He stopped the car and arrested her. When a search was conducted of the vehicle, the officers found jars with two-layered liquids, coffee filters, aluminum foil, and other items associated with manufacturing methamphetamine.

26.     On July 17, 2003, Larry Gregg was the subject of a traffic stop in East Ridge. In plain view, the officers saw cans of Drano drain cleaner and rubber tubing. Gregg gave consent to search the car and officers found evidence of methamphetamine manufacturing including a jar containing a layered liquid, Coleman fuel, and other items. Agents with the Drug Enforcement Administration (DEA) responded to the scene and Gregg told one of the agents that he was delivering the items to Christi Kinsey and she was going to cook the methamphetamine.

27.     On August 5, 2003, CPD officers responded to the King's Lodge hotel in Chattanooga, where a reported methamphetamine laboratory was in a hotel room. Officers found Larry Gregg in the room and he was arrested.

28.     On August 21, 2003, a DEA agent went to Ft. Payne, Alabama, to interview Rory Shankles. Shankles was in custody in Alabama after being arrested there for methamphetamine offenses on August 5, 2003. After advice and waiver of rights, Shankles stated that from 1978 to 1984 he manufactured methamphetamine using cases of inhalant products. From 1989 to 1990, he assisted others in manufacturing methamphetamine using the chemical P2P. From 1992 until his arrest in Alabama, Shankles stated he cooked methamphetamine one to two times a week, averaging a yield of eight to twelve ounces of methamphetamine per cook. He stated he used the red phosphorous method since 1992. Shankles admitted that he frequently obtained chemicals and equipment for meth cooking in the Eastern District of Tennessee.

29.     On October 17, 2003, officers with the East Ridge Police Department executed a search warrant at 701 Haven Hill Drive, East Ridge. This residence is a multifamily dwelling, formerly a single-family residence that has now been converted into apartments. The owner, Charles Harris, lived in the building. Stephanie Highfield lived in an apartment in the building, and her apartment was the subject of the search warrant. Jesse Highfield, Stephanie's brother, apparently lived in a bedroom which was part of both Charles Harris's apartment and in his sister's apartment. Jesse Highfield was in Stephanie Highfield's apartment when the search warrant was executed. He ran into the kitchen and attempted to dispose of some methamphetamine. Officers found equipment and chemicals throughout Stephanie Highfield's apartment as well as finished methamphetamine (exact amount unknown). Some of the items found included:

- Pyrex dishes with red stains
- Tubing

- 500 ml flask with red residue
- Funnels
- Unused coffee filters
- 10 boxes of 50-count book matches
- 2 bottles of HEET
- Red Devil lye
- Used coffee filters with red stains
- Inositol (a cutting agent)
- Iodine
- Various containers of layered liquids.

On Stephanie Highfield's bedroom door was a poem about methamphetamine. A framed photograph of Stephanie Highfield in the living room showed her ingesting what appeared to be ecstasy. Stephanie Highfield was not present when officers executed the search warrant at her apartment. On the day the search warrant was executed, Stephanie Highfield was still employed at the CVS Pharmacy, Brainerd Road, Chattanooga, Tennessee.

30.     Following this search, while the case was still being investigated, agents discovered that on May 5, 2003, the Hamilton County Sheriff's Office had used another confidential informant to purchase pseudoephedrine from Stephanie Highfield. Following the transaction, on May 11, 2003, the informant telephoned Stephanie Highfield. The call was recorded. The informant discussed making methamphetamine with the pseudoephedrine purchased from Stephanie Highfield. The informant sought to purchase 25 boxes of pseudoephedrine, but Stephanie Highfield said she was on vacation and not presently in the pharmacy. Highfield advised the informant to contact her when Highfield returned from vacation. A second confidential informant, who had made controlled purchases of methamphetamine lab components for DEA, stated that Stephanie Highfield sold the informant 40 boxes of pseudoephedrine while Highfield was employed at CVS.

31.     On October 31, 2003, bail bondsmen went to the Best Inn on Ringgold Road in East Ridge, Tennessee to arrest Jesse Highfield on an outstanding warrant. While in Jesse Highfield's hotel room, the bondsmen observed what appeared to be equipment used to manufacture methamphetamine. The bondsmen called the CPD and reported the possibility of a methamphetamine laboratory. Officers responded to the scene and found items associated with methamphetamine manufacturing including rubber tubing, alcohol, cold tablets with pseudoephedrine, Mason jars with liquids, coffee filters, a hot plate, HEET antifreeze, and other items.

32.     During the week of November 17, 2003, a concerned citizen telephoned the Methamphetamine Task Force. The citizen stated that Genea Davis and her boyfriend, Kevin Martin, were cooking methamphetamine and endangering the

health of Davis's two small children. The citizen stated that Davis, Kevin Martin, and the two children were living in a small apartment at the home of Davis's parents, and that Davis and Kevin Martin were cooking methamphetamine in that apartment. The caller believed that Kevin was on parole and had recently removed his ankle bracelet. According to the caller, a family member had tried to remove the children from the situation but had only limited success. After this call was received, the Soddy Daisy Police Department was contacted and on November 19, 2003, an officer went to the location provided by the caller, McKenzie's Mobile Home Park, and discovered a methamphetamine lab in a vacant trailer. The officer saw Genea Davis at the trailer next to the vacant trailer. Charlene Lewis lived in the trailer where Davis was spotted. Officers found methamphetamine lab components in Lewis's trailer also. On November 24, 2003, Davis admitted to officers questioning her that she had been at the vacant trailer. She also admitted that she had knowledge of the methamphetamine lab in the trailer and she was involved in the methamphetamine activity there.

33.    On Thursday, November 20, 2003, DEA arrested Stephanie Highfield at her home at 701 Haven Hill Drive. Also present at the house were Robert Adkins and Damien Swanson. In Adkins' vehicle, officers found Coleman fuel, a backpack, a Rubbermaid tote, a suitcase, and a lockbox. Inside the backpack was a propane torch. In the lockbox were iodine, tubing, and hypodermic needles. Inside Highfield's home were methamphetamine, containers of unknown liquids, and several containers containing various methamphetamine lab components. Swanson was found to have pseudoephedrine, red phosphorous and scales in his possession.

34.    While DEA was at Stephanie Highfield's home on November 20, 2003, Adam Warner drove up close to the Highfield home and was stopped by police. In the vehicle Warner was driving, DEA found a quantity of ephedrine still in the blister packs. Warner made a voluntary statement to DEA. He said that he and Rory Shankles were the two best methamphetamine cooks now in Chattanooga. Warner said he had been talking to Adkins about selling Adkins flats of ephedrine. Warner stated the ephedrine in his vehicle was going to be delivered to Adkins.

35.    On November 24, 2003, DEA was notified by the CPD of a possible methamphetamine lab at the Best Inn and Suites in East Ridge, Tennessee. DEA was also told that Shankles had been at the Best Inn location recently. As DEA agents drove toward the Best Inn, Shankles was seen walking on Ringgold Road about 200 yards away from the Best Inn. The agents knew that there were outstanding arrest warrants for Shankles out of Hamilton County, Tennessee, and Walker County, Georgia. DEA agents arrested Shankles and found about one-half gram of methamphetamine on Shankles' person. According to the agents, Shankles smelled like a methamphetamine lab.

36.    Shankles stated he was staying in Room 265 at the Best Inn, in a room rented

by the husband of Christi Kinsey. DEA went to the Best Inn and spoke to the CPD officers there who had secured Rooms 264, 265, and 134. The officers also had detained five people, including Genea Davis and Christi Kinsey. Kinsey had rented Rooms 264 and 265, and she consented to a search of those rooms. In Room 265, agents found an orange backpack which contained razor blades, bag, water purification tablets containing iodine, and coffee filters. Also in Room 265 were a white backpack containing empty glass vials (commonly used to store methamphetamine), a yellow glassine bag containing a white crystalline substance, and assorted empty glassine bags. Under a laundry basket in Room 265 was a coffee grinder (which did not smell like coffee), and on the dresser were a box of unused coffee filters and a roll of aluminum foil. Also in Room 265 were about one gram of methamphetamine in a glass vial and a butane torch on the table. Nothing which appeared to be contraband or items associated with methamphetamine manufacturing was found in Room 264.

37.     Room 134 had been rented by Kevin Martin. (Martin, who is on federal supervised release for methamphetamine offenses, had absconded from supervision; revocation of his supervised release is pending). Martin's girlfriend, Genea Davis, was in the room and consented to a search. Agents found a Pyrex dish containing white residue, a hot plate, jars containing multilayered liquids, propane canisters, a bottle of HEET antifreeze, Coleman fuel, used coffee filters (one with red sludge), new coffee filters, and a graduated flask with iodine residue.

38.     After advice and waiver of rights, Genea Davis stated that Rory Shankles and Christi Kinsey had processed the ephedrine tablets in the microwave in Christi's room. (Agents noted that there was a microwave in Room 264, but not in Room 265 or Room 134.) Davis also stated that the methamphetamine lab components found in Room 134 belonged to Shankles, and Shankles and Kevin Martin had moved the components from Room 264/265 to Room 134. Davis said she had used methamphetamine during the night of November 23, 2003, which she got from Shankles and Martin.

39.     Genea Davis told the agents that Martin had been wearing an electronic monitoring ankle bracelet and cut it off about two weeks ago. She said Martin had failed a drug test and decided to start using methamphetamine again.

40.     Genea Davis stated that Shankles had a "safehouse" off East Brainerd Road near the Favorite Market. She said Shankles cooked methamphetamine there and hid there. She stated a man named "Jerry" lived there. She said that on Saturday night, November 22, 2003, she had been at this home with Shankles, Martin, and others but she did not know their names. Davis said that she had seen Shankles and Martin cooking methamphetamine. She said they prepared the ephedrine pills by heating them in the microwave then they mixed the ephedrine with red phosphorous and cooked it in a "cone-looking thing" (a flask) on the stove. In the "safehouse" Davis

had seen coffee filters, lots of Mason jars, and about thirty feet of tubing stored. Davis took officers to this home, which is located at 8316 Iris Drive, Chattanooga, Tennessee, in East Brainerd, in the Eastern District of Tennessee. Agents learned from CPD dispatch records that a caller who identified himself as "Jerry Holt" telephoned police on several occasions to request assistance at 8316 Iris Drive.

41.     On November 24, 2003, at about 6:30 p.m., officers went to the residence of Jerry Holt at 8316 Iris Drive. Holt told agents that Shankles lived at that location. Holt consented to a search of that part of the property he controlled, but said he could not consent to the part where Shankles lived. In plain view outside the residence, agents saw many discarded items commonly used in the making of methamphetamine, including rubber hoses, aluminum foil, HEET containers, coffee filters, baggies, grinders, and Mason jars. Agents obtained and served a search warrant at the location. According to Jerry Holt, Shankles had been renting an apartment there for four weeks. A search of that apartment revealed containers of layered liquid, iodine, glassware (including a flask), Coleman fuel, HEET, twenty-four bottles of Pseudo 60's, red phosphorous, tubing, and other items commonly used to make methamphetamine.

42.     On December 2, 2003, a truck which had been in the control of Kevin Martin was searched. Components of a methamphetamine lab were found in the truck.

(PSR, pp. 6-10).

## III.     *Analysis*

### A.     *Due Process Violation*

Shankles alleges his sentence is unconstitutional because the Court violated his due process rights when it sentenced him based on two federal statutes which he claims are unconstitutional, and when it sentenced him for a Schedule II rather than a Schedule III controlled substance. Specifically, Shankles claims his due process rights were violated when he was sentenced to 168 months imprisonment based on an unconstitutional law, i.e., 21 U.S.C. § 841(b)(1)(B); when his sentenced was enhanced on the bases of 21 U.S.C. § 851, which he alleges is unconstitutional; and when he was convicted of an offense involving a Schedule II controlled substance when non-injectable methamphetamine is a Schedule III controlled substance. As explained below, these

claims fall within the scope of the waiver Shankles signed as part of his plea agreement which effectively waived the right to raise these issues on collateral review (Criminal Court File No. 136).

Shankles signed a plea agreement which included the following paragraph:

> 7.    The defendant expressly waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 on any ground, other than ineffective assistance of counsel, prosecutorial misconduct, or subsequent change in the interpretation of the law which may affect his case. Thus, the defendant knowingly, intentionally, and voluntarily waives the right to collaterally attack the plea being offered in the instant case. The defendant further acknowledges that a breach of this clause of the plea agreement (like the defendant's breach of any other clause of the plea agreement) would leave the United States free to withdraw from the plea agreement.

(Criminal Court File No. 136). In addition, during the rearraignment, the prosecutor explained the plea agreement, specifying:

> Paragraph 7 states that each of the defendants is expressly waiving the right to file any motion or pleading pursuant to 28 U.S.C. Section 2255 on any ground other than ineffective assistance of counsel, prosecutorial misconduct, or a subsequent change in the interpretation of the law which may affect his or her case, therefore, each defendant is knowingly, intentionally and voluntarily waiving the right to collaterally attack the plea.

(Criminal Court File No. 216, p. 4). Shankles confirmed that he had read his plea agreement and that what the prosecutor stated was correct (Criminal Court File No. 216, p. 5).

The Sixth Circuit has determined that a criminal defendant may waive '"any right, even a constitutional right' by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001) (citing, *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995), *cert. denied sub nom. Daughtrey v. United States*, 516 U.S. 859 (1995). The right to appeal and the right to seek post-conviction relief are statutory rights that may be waived. Thus, plea agreements that include waivers of § 2255 rights are generally enforceable if the defendant entered into the waiver agreement knowingly, intelligently, and voluntarily. *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir.

2001); *also see Watson v. United States*, 165 F.3d 486, 489 N. 4 (6th Cir. 1999). In other words, a knowing and voluntary waiver in a plea agreement not to file any motions or pleadings pursuant to 28 U.S.C. § 2255 is an effective means to bar such relief. *Id.* at 451; *also see Palmero v. United States*, 101 F.3d 702 (6th Cir., Nov. 21, 1996) (unpublished table decision) 1996 WL 678222, at *2; *United States v. Bazzi*, 94 F.3d 1025, 1028 (6th Cir. 1996); *United States v. Ashe*, 47 F.3d 770, 775 (6th Cir.), *cert. denied*, 516 U.S. 859 (1995); *United States v. Wilkes*, 20 F.3d 651 (5th Cir. 1994). Thus, Shankles's due process violation claims are barred from collateral review because the waiver contained in his plea agreement is sufficient to bar relief to these claims in this case.

In sum, Shankles is bound by his plea agreement wherein he expressly waived "the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 on any ground, other than ineffective assistance of counsel, prosecutorial misconduct, or subsequent change in the interpretation of the law which may affect his case." (Criminal Court File No. 136). Shankles does not claim nor does the record indicate that he did not knowingly, intelligently, and voluntarily waive his § 2255 rights. Accordingly, since Shankles's claims are not covered by any of the grounds reserved by him in the plea agreement, he has waived his right to bring these due process claims.

## B.       *Ineffective Assistance of Counsel*

Shankles also raises two alleged instances of ineffective assistance of counsel. Specifically, he claims counsel failed to conduct a factual investigation of his case and failed to investigate and challenge the drug quantity for which he was responsible. After discussing the applicable law, the Court will analyze each alleged instance of ineffective assistance of counsel.

### 1.       *Applicable Law*

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established the criteria

for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, i.e., counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *McQueen v. Scroggy*, 99 F.3d 1302, 1310-11 (6th Cir. 1996); *Sims v. Livesay*, 970 F.2d 1575, 1579-81 (6th Cir. 1992). *See also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987).

In order to demonstrate deficient performance, it must be shown that counsel's representation fell "below an objective standard of reasonableness" in light of the "prevailing professional norms." *Strickland*, 466 U.S. at 686-88. In *Bobby v. Van Hook*, the Supreme Court reiterated that an objective standard of reasonableness is a general standard:

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Restatements of professional standards, we have recognized, can be useful as
>
> "guides" to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place.

*Bobby v. Van Hook*, ___ U.S. ___, 130 S.Ct.13, 16 (2009) (quoting *Stickland v. Washington*, 466 U.S. at 688-89) (citations omitted).

As the Sixth Circuit explained in *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993): "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *See also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.), *cert. denied*, 116 S. Ct.

2569 (1996). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West*, 73 F.3d at 84 (quoting *Strickland*, 466 at 691).

When applying these standards, the Court is cognizant of the fact that there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. "Reviewing courts focus on whether counsel's errors have undermined the reliability of and confidence that the trial was fair and just." *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997) (citing *Strickland*, 466 U.S. at 687; *United States v. Cronic*, 466 U.S. 648, 658, (1984), *cert. denied*, 523 U.S. 1088 (1998); *McQueen [v. Scroggy]*, 99 F.3d [1302,] 1310-11 [6th Cir. 1996]). A reviewing court cannot indulge in hindsight but must instead evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Strickland,* 466 U.S. at 690; *McQueen*, 99 F.3d at 1311. Trial counsel's tactical decisions are particularly difficult to attack. *McQueen*, 99 F.3d at 1311; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828. "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (quoting *Strickland,* 466 U.S. at 690). A court must make an independent judicial evaluation of counsel's performance and determine whether counsel acted reasonably under all the circumstances. *McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828; *Ward v. United States*, 995 F.2d 1317, 1321-22 (6th Cir. 1993)*; Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

To establish the prejudice prong, a petitioner must show that absent his attorney's errors, the result of his trial would have been different. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir.) (quoting *Strickland,* 466 U.S. at 691 (further citation omitted)), *cert. denied*, 518 U.S. 1027 (1996).

The Supreme Court has reiterated the standard of prejudice in *Wiggins v. Smith*, 539 U.S. 510 (2003):

> [T]o establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* at 534 (quoting *Strickland v. Washington*, 466 U.S. at 694).

### 2.    *Counsel's Failure to Investigate the Facts of the Case*

Shankles alleges counsel failed to conduct an adequate investigation into the quantity of drugs involved in this case which resulted in him "receiving a greater sentence than he would have otherwise have received." Shankles pled guilty to conspiring to manufacture and distribute 50 grams or more of methamphetamine.

Shankles told a DEA agent he manufactured or assisted others in manufacturing methamphetamine from 1978 to his arrest. He admitted that from 1992 until his arrest on August 5, 2003, he cooked methamphetamine one to two times a week, averaging a yield of eight to twelve ounces of methamphetamine per cook (PSI, ¶ 28, p. 7). Counsel objected to the presentence report attributing drug amounts back to 1992. The Court agreed with defense counsel and, using the lesser

amount of eight ounces, sentenced Shankles based on the drug amounts he cooked during the time of the conspiracy. Thus, the Court calculated his sentence based on eight ounces per week for twelve weeks (May-June 2003), for a total of ninety-six ounces (Court File No. 229, p. 15-16).

Shankles has produced no evidence to show that the amount of drugs for which he was sentence is incorrect. He simply makes an unsupported allegation that does not suffice to meet his burden of showing a "reasonable probability" that his sentence would have been different had counsel investigated the drug amounts involved in his case. *Strickland*, 466 U.S. at 694. Shankles does not deny that he cooked the amount of methamphetamine attributed to him and which was used to calculate his sentence. Shankles does not deny now, nor did he during sentencing, that the quantity and type of methamphetamine attributable to him was incorrect. Consequently, Shankles has not demonstrated counsel's performance was deficient or that he suffered any prejudice as a result of counsel's failure to conduct an investigation. Accordingly, Shankles claim that counsel failed to conduct an adequate investigation into the quantity of drugs attributable to him fails and relief will be **DENIED**.

### 3. *Appellate Counsel*

Although Shankles did not specifically raise a claim of ineffective assistance of appellate counsel, for the sake of thoroughness, the Court will analyze the following issues based on his statements that his three due process claims were not previously raised because he was "entirely dependent upon his counsel to raise the appropriate issues." (Court File No. 271, pp. 4, 6, & 9).

### a. **Unconstitutionality of 21 U.S.C. § 841(b)(1)(B)**

Shankles claims that counsel was ineffective for failing to appeal a claim that his due process rights were violated when he was sentenced pursuant to the provisions of 21 U.S.C. § 841(b)(1)(B)

because the statute is unconstitutional since it does not provide for a jury to determine the drug quantity. This claim is without merit.

Shankles pleaded guilty to conspiring to manufacture and distribute fifty grams or more of a mixture containing methamphetamine. The statute provides for a term of imprisonment of 5 to 40 years. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court ruled that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. *Apprendi* was applied to Shankles case as he arrested after *Apprendi* was decided. The indictment charged Shankles with conspiring to manufacture 50 grams or more of methamphetamine, Shankles admitted the facts supporting this amount when he entered into the plea agreement that he conspired to manufacture and distribute fifty grams or more of a mixture containing methamphetamine. The Court relied solely on these facts and Shankles statement to law enforcement to determine Shankles Guideline range. The 168-month sentence was below statutory maximum sentence of forty years established by § 841(b)(1)(B). Thus, there was no *Apprendi* violation.

Moreover, it is well-settled that the drug statutes are constitutional and that the decision in *Apprendi* did not alter that conclusion. *See United States v. Chalmers,* 57 Fed. Appx. 688 (6th Cir. Mar. 11, 2003) (reiterating 21 U.S.C. § 841(b)(1)(B) is not unconstitutional under *Apprendi*), *cert. denied*, 540 U.S. 1025 (2003) (citing *United States v. Stines*, 313 F.3d 912, 919 (6th Cir. 2002) (§ 841 is not unconstitutional in light of *Apprendi*)); *United States v. Martinez*, 253 F.3d 251, 256 n.6 (6th Cir. 2001) (same). Accordingly, there was no cognizable violation under *Apprendi* because the 168-month sentence Shankles received fell below the maximum term of forty years to which he was exposed under 21 U.S.C. § 841(b)(1)(B) and relief on this claim will be **DENIED**.

### b.  Unconstitutionality of 21 U.S.C. § 851

Shankles apparently claims counsel was ineffective for failing to argue and raise on appeal a claim that  21 U.S.C. § 851 is an  unconstitutional delegation by Congress to the Executive, and therefore, the enhancement of his sentence on the basis of that statute denied him his due process rights.

Shankles received notice under this provision that he would be subject to a mandatory minimum ten year sentence and that the maximum statutory sentence would be increased from forty years to life based upon his prior drug conviction.  Shankles complains that the authority to increase his statutory sentencing range under this statutory provision violates due process and in unconstitutional in light of *Apprendi* and its progeny.

Shankles was sentenced above the minimum mandatory and below the unenhanced  forty-year sentence.  Therefore, the § 851 notice had no effect on his sentence.  Consequently, he is unable to demonstrate counsel was ineffective for failing to make this argument or he suffered any prejudice as a result of counsel's failure to make this argument.  Moreover, the Sixth Circuit has held § 851 does not constitute an unconstitutional delegation of legislative authority and that the constitutionality of § 851 is unaffected by the holding of *Apprendi*.  *United States v. Crayton*, 357 F.3d 560, 571 n. 8 (6th Cir. 2004).

Accordingly, this claim offers no basis for relief; it will be **DENIED**.

### c.  Failure to Raise Failure to Prove Schedule II Methamphetamine

Shankles claims counsel failed to raise, during sentencing or on appeal, that the United States failed to charge or prove that the methamphetamine in this case "was anything other than a non-injectable form of methamphetamine," thus, according to Shankles, he should be sentenced for

manufacturing a Schedule III controlled substance.  Shankles is under the mistaken impression that methamphetamine can only be a Schedule II controlled substance under 21 U.S.C. § 812 when it is in the form of an injectable liquid.  Arguing that nothing in the indictment charged him with having possessed or produced an injectable form of methamphetamine and no facts establish the methamphetamine was injectable methamphetamine, Shankles maintains he must be resentenced because his 168 month sentence exceeds the statutory maximum allowed for a conviction based on methamphetamine as a Schedule III controlled substance.

Although the initial schedules enacted by Congress identified only injectable liquid methamphetamine as a Schedule II controlled substance, as the Sixth Circuit explained in *United States v. Schrock*, 855 F.2d 327, 331 (6th Cir. 1988), the initial schedule enacted by Congress for noninjectable methamphetamine is no longer in effect.  The Court explained that Congress vested the Attorney General with the authority to add drugs to, remove drugs from, or transfer drugs between the five schedules. *Id.*; 21 U.S.C. § 812 (c) (providing initial schedules of controlled substances "unless and until amended pursuant to section 811); 21U.S.C. § 811 (authorizing Attorney General to make changes to schedules of controlled substances).  In 1974 the Attorney General properly exercised the authority granted by Congress pursuant to 21 U.S.C. § 811 to redesignate and reclassify noninjectable  methamphetamine as a Schedule II controlled substance. *Id.* at 332.  Thus, this argument has been raised and rejected by the Sixth Circuit and offers Shankles no relief.  *Id.*; *United States v. Pinkley*, 24 Fed. Appx. 287 (6th Cir. 2001) (same citing *Schrock)*.

Therefore, under the Attorney General's regulations, which are currently in effect, Shankles was properly indicted for conspiring to distribute a Schedule II controlled substance.  Accordingly, because counsel was not deficient for failing to raise this meritless claim in the district court or on

appeal, Shankles has failed to prove counsel was ineffective and relief on this claim will be **DENIED**.

### d.    Counsel's Failure to Withdraw Guilty Plea Earlier

Although not raised in his § 2255 motion, Shankles included the following in his supporting ninety-three page brief: "Counsel's failure to timely file a motion for leave to withdraw the proffered guilty plea as requested by Petitioner rather than waiting until the eve of the sentencing to do so, was objectively unreasonable and violated Petitioner's Sixth Amendment right to effective assistance of counsel."

Contrary to the express directions of Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, Shankles' claim does not "state the facts supporting [this] ground" of ineffective assistance of counsel. Shankles does not provide any factual support for this assertion, thus the Court is unable to determine when Petitioner requested counsel to filed a motion to withdraw the proffered guilty plea. Consequently, Shankles has failed to set forth a legally sufficient claim for relief because he has omitted the factual support for his claim. This claim does not contain sufficient facts to constitute a viable claim for relief in a federal habeas court.

The Court observes however, that counsel filed a motion to withdraw Shankles guilty plea on September, 24, 2004, three days prior to Shankles' sentencing hearing (Criminal Court File No. 196). The motion reflects the decision to file the motion to withdraw "was arrived at after a lengthy discussion between attorney-client in the late evening of September 23, 2004. Had the Defendant's wishes been know (sic) earlier, this motion would have been filed earlier." (Criminal Court File No. 196). The supplement to the motion to withdraw his guilty plea reflects:

In counsel's opinion, he has rendered effective assistance to the Defendant; however, the Defendant may feel differently. After entering the guilty plea, counsel immediately forwarded a copy of the Defendant's presentence report to him on June 24, 2004 with directions to notify me immediately of any comments or objections. Counsel's legal assistant, Bryan Scott, met with the Defendant in his new holding facility in Cleveland, Tennessee, approximately 30 miles distant, within a week after the presentence report was mailed to the Defendant. The Defendant and counsel talked several times on the phone between then and September 23, 2004 with no apparent urgency.

(Criminal Court File No. 199). Shankles does not deny counsel's version of the facts surrounding the request to withdraw his guilty plea. According to counsel's account of the situation, the motion to withdraw his guilty plea was filed as soon as he was notified of Shankles desire to withdraw his guilty plea.

In addition, the Court's Memorandum and Order denying the motion does not indicate the motion would have been granted if it had been filed earlier, as all the factors the Court considers in determining whether a defendant has shown a "fair and just reason" under Fed.R.Crim.P. 32(e) to withdraw a plea weighed against Shankles (Criminal Court File No. 217).

Accordingly, this claim of ineffective assistance of counsel, which is facially insufficient to state a claim for relief, will be is summarily **DENIED** for failure to comply with Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. *See Sloan v. United States*, 2006 WL 686875 (E.D. Tenn. March 16, 2006);*United States v. Vega*, 2006 WL 1699530 (W.D. Tenn. June 15, 2006); *and United States v. Butt*, 731 F.2d 75, 77 (1st Cir. 1984). The Court also makes the alternate finding that it is without merit.

## IV.    *Conclusion*

Shankles has failed to present any facts which establish his sentence is subject to collateral attack under 28 U.S.C. § 2255.   Shankles is not entitled to any relief under § 2255 and a judgment

will enter **DENYING** his motion.

      E N T E R this the 14th day of April, 2011.


<u>         */s/ R. Allan Edgar*         </u>
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE